IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GILA RIVER INDIAN COMMUNITY, DESTINY O., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.B., J.L., S.L.[1], *Appellees*.

No. 1 CA-JV 15-0178
FILED 12-8-2015

Appeal from the Superior Court in Maricopa County
No. JD 510468
The Honorable Shellie F. Smith, Judge *Pro Tem*

**VACATED AND REMANDED**

COUNSEL

Office of General Counsel, Sacaton
By Sunshine Whitehair, Linus Everling, Julian Nava
*Co-Counsel for Appellant Gila River Indian Community*

Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg, LLP, Tempe
By April E. Olson
*Co-Counsel for Appellant Gila River Indian Community*

---

[1]     On the court's own motion, it is ordered amending the caption as reflected in this opinion, which shall be used for all future filings.

Arizona Attorney General's Office, Mesa
By JoAnn Falgout, Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

Law Office of Sara J. Smith, PLLC, Goodyear
By Sara J. Smith
*Counsel for Foster Parent Intervenors*

---

**OPINION**

Presiding Judge Margaret H. Downie delivered the Opinion of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

**D O W N I E**, Judge:

**¶1** The Gila River Indian Community (the "Community") appeals the denial of its motion to change physical custody of a dependent Indian child in foster care. The Community challenges the juvenile court's determination that good cause exists to deviate from placement preferences set forth in the Indian Child Welfare Act ("ICWA"). We hold that good cause to deviate from ICWA placement preferences must be established by clear and convincing evidence. Because it is not apparent that the juvenile court applied this heightened standard of proof, we vacate its good cause determination and remand for reconsideration applying the clear and convincing evidence standard.

**FACTS AND PROCEDURAL HISTORY**

**¶2** D.B. was born in November 2012 and is the second youngest of four daughters born to Destiny O. ("Mother"). Three months after D.B.'s birth, the Department of Child Safety ("DCS") filed a dependency petition, alleging on information and belief that D.B. was not an Indian child.[2] Mother had advised the agency that D.B.'s father had Indian blood but was not an enrolled member of a tribe.

---

[2] The Arizona Department of Economic Security originated this action but was later replaced by the Department of Child Safety. *See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014).

**¶3**        In March 2013, DCS placed D.B. with a non-Indian foster family.  D.B.'s father subsequently enrolled in the Community, and in June 2013, the Community intervened in the juvenile court proceedings. D.B. also became an enrolled member of the Community.

**¶4**        The initial case plan called for reunification with Mother. DCS placed D.B. back in Mother's care in February 2014 but returned her to the foster home one week later upon learning that Mother had allowed D.B.'s father to be present in the home, notwithstanding a no-contact order as to the children due to his guilty plea to felony child abuse.

**¶5**        The juvenile court changed the case plan to severance and adoption in April 2014.  In July 2014, DCS placed D.B.'s youngest sister in the same foster home with D.B.  Shortly thereafter, the Community advised it had found an ICWA-compliant placement, and it moved to change D.B.'s custody.[3]  The Community urged the court to place D.B. with her father's cousin, whom the Community refers to as D.B.'s "aunt."

**¶6**        After an evidentiary hearing, the juvenile court denied the Community's motion to change D.B.'s custody.  The court found good cause to deviate from ICWA placement preferences, articulating the following findings:

- D.B. has received good care from her foster parents.

- D.B. has been in the foster parents' care for nearly her entire life, and they "are the only parents she knows."

- "Significant attachment and bonding" has occurred between D.B. and the foster parents.

- D.B. "understands her relationship with her sister . . . [and] a bond between the two has already begun to be established."

---

[3]        D.B.'s father is not the two older girls' father, and he denied paternity of the youngest child and refused to submit to paternity testing. As far as our record reflects, D.B. is the only one of the four siblings subject to ICWA. *See* 25 U.S.C. § 1903(4) ("'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]").

- The foster parents "have become licensed to have four foster children in their home, and are working to have [D.B.]'s other two sisters come live in the same home."

- Placement with the aunt was not proposed until "late in the game," and no evidence was presented that the aunt "has any relationship or bond with [D.B.], other than seeing her at a family function when she was less than two months old."

- Emotional damage would result if D.B. were removed from her current placement.

- The foster family has agreed that D.B. will "learn about her tribal heritage if she remains with them."

- The foster family is amenable to an open adoption and ensuring that D.B. "will know her Native American Culture."

- "Although it would be easier for [D.B.] to be exposed comprehensively to the Community's culture by living with a Community family, she could still be so exposed through the cooperative efforts of her relatives and the current placement."

¶7        The Community timely appealed. We have jurisdiction pursuant to Arizona Rule of Procedure for the Juvenile Court 103(A) and Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶8        The Community argues the juvenile court erred by refusing to move D.B. to an available ICWA-preferred placement. The Community further contends the good cause determination is not supported by sufficient evidence. We first address the applicable standard of proof.

## I.        Evidentiary Standard

¶9        The juvenile court found that the record offered "substantial support" for its good cause determination. The court did not, however, articulate the standard of proof it applied — likely because no one raised the issue. Although we could, as DCS urges, find that the Community has waived the issue, we instead exercise our discretion to consider the matter on the merits because it presents a pure question of law that affects important rights and is likely to recur. *Cf. Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 419, ¶¶ 17–18 (App. 2011) (choosing to analyze

4

standard of proof for "active efforts" under ICWA, notwithstanding appellant's failure to raise issue in juvenile court); *City of Tempe v. Fleming,* 168 Ariz. 454, 456 (App. 1991) (tenet that argument not made in trial court cannot be asserted on appeal is procedural, not jurisdictional, and may be suspended at appellate court's discretion). "In a case where the placement of a young child is at issue, allocation of the burden of proof in the trial court's assessment of good cause is an issue of vital importance and sufficient magnitude to warrant relaxation of the rule of [waiver]."[4] *In re Alexandria P.*, 176 Cal. Rptr. 3d 468, 489 (App. 2014).

¶10 We interpret ICWA provisions *de novo. See Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 10 (2009). "In interpreting ICWA, we attempt to give effect to the will of Congress as expressed in the statutory language, which we construe liberally in favor of the interest in preserving tribal families." *Id.*

¶11 Congress has delineated placement preferences for dependent Indian children in 25 U.S.C. § 1915. In making adoptive placements, preference shall be given, "in the absence of good cause to the contrary," to: (1) a member of the child's extended family; (2) other members of the child's tribe; or (3) other Indian families. 25 U.S.C. § 1915(a). In the context of foster and "preadoptive" placements, preference shall be given, "in the absence of good cause to the contrary," to a placement with: (1) extended family; (2) a foster home licensed, approved, or specified by the child's tribe; (3) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or (4) "an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs." 25 U.S.C. § 1915(b).

¶12 Although Congress has dictated standards of proof elsewhere in ICWA, *see, e.g.*, 25 U.S.C. § 1912(e) (foster care placement requires clear and convincing evidence that continued custody by parent

---

4 At oral argument, DCS suggested we order supplemental briefing regarding the standard of proof. We decline to do so. Parties act at their peril in assuming an appellate court will apply the doctrine of waiver, thereby foregoing an opportunity to address an identified issue on the merits. Moreover, a young child's permanency is at stake, dictating against further delay in these proceedings.

or Indian custodian is likely to result in serious emotional or physical damage); 25 U.S.C. § 1912(f) (termination of parental rights requires proof beyond a reasonable doubt that continued custody is likely to result in serious emotional or physical damage), it has not done so in the context of good cause determinations under § 1915. When Congress has not mandated a standard of proof under ICWA, we typically look to state law. *Cf. Valerie M.*, 219 Ariz. at 334–35, ¶¶ 10, 16–17 (court applies the law, state or federal, that provides higher standard of protection).

¶13    This Court has addressed other ICWA-related proof issues, *see, e.g.*, *Yvonne L.*, 227 Ariz. at 421, ¶ 26 (clear and convincing evidence required for "active efforts" determination), but the question before us is one of first impression under Arizona law. And because the issue is how to lawfully deviate from federally mandated placement preferences, it is difficult to identify a true state law analog. We therefore find instructive the legislative history of ICWA, as well as other jurisdictions' resolution of the question. *See Alexandria P.*, 176 Cal. Rptr. 3d at 491 ("[C]ourts have almost universally concluded that Congress intended a nationally consistent standard of proof for the good cause exception.").

¶14    The impetus for ICWA was a concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children" and "an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). Congress found that states "have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(5). By enacting ICWA, "Congress declared a two-fold national policy: the protection of the best interests of Indian children, and the promotion of stable and secure Indian tribal entities." *Pima Cty. Juv. Action No. S-903*, 130 Ariz. 202, 203 (App. 1981); *see also* 25 U.S.C. § 1902 ("The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .").

¶15    ICWA articulates a strong federal policy that, "where possible, an Indian child should remain in the Indian community." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 37 (1989). The United States Supreme Court has called the adoptive placement preferences set forth in § 1915(a) ICWA's "most important substantive requirement

imposed on state courts." *Id.* at 36-37. And even in the context of foster placements, deviations from ICWA preferences remove, or at the very least, distance an Indian child from his or her native community — something likely to occur more readily under a preponderance of the evidence standard.

¶16 Guidelines developed by the Bureau of Indian Affairs to assist state courts and agencies in implementing ICWA apply the clear and convincing standard. *See* Guidelines for State Courts and Agencies in Indian Child Custody Proceedings ("Guidelines"), 80 Fed. Reg. 10146-02. Although the Guidelines are not binding, we nevertheless consider them in interpreting ICWA. *See, e.g., Navajo Nation v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 339, 345, ¶ 19 (App. 2012) (relying on Guidelines for nonbinding guidance on how to interpret "good cause"); *Maricopa Cty. Juv. Action No. JS-8287*, 171 Ariz. 104, 108 (App. 1991) (consulting Guidelines in deciding whether good cause existed to deny petition to transfer custody matter to tribal court).

¶17 The current version of the Guidelines states that a party seeking a deviation from ICWA preferences "bears the burden of proving by clear and convincing evidence the existence of 'good cause' to deviate from the placement preferences." Guidelines at 10158. The Department of the Interior recently incorporated this provision into a proposed rule. *See* Regulations for State Courts and Agencies in Indian Child Custody Proceedings ("Regulations"), 80 Fed. Reg. 14880-01, 14892. If adopted, the Regulations will be binding on state courts. *See* Regulations at 14881.

¶18 Additionally, the clear majority view of other state courts is that clear and convincing evidence is required. *See, e.g., Native Vill. of Tununak v. Alaska*, 303 P.3d 431, 448, 453 (Alaska App. 2014) (overruling earlier precedent regarding adoptive placements and concluding a preponderance of the evidence standard does not sufficiently ensure "courts will properly consider ICWA's policy mandates in making § 1915(a) good cause determinations."), *vacated in part on other grounds by* 334 P.3d 165 (Alaska 2014); *Alexandria P.*, 176 Cal. Rptr. 3d at 490 ("ICWA's policy goal of promoting the stability and security of Indian tribes and families persuades us to join the growing number of state courts . . . that apply the clear and convincing standard of proof to good cause determinations under section 1915."); *In re Adoption of Baby Girl B.*, 67 P.3d 359, 374, ¶ 78 (Ok. App. 2003) (A clear and convincing standard will foster ICWA policies "and the preferences stated therein and will assist with the effort to avoid inadvertent interjection of cultural bias into the proceeding."); *People ex rel. S. Dakota Dep't of Soc. Servs.*, 795 N.W.2d

39, 44, ¶ 24 (S.D. 2011) ("The 'clear and convincing' standard appears to be the better-reasoned approach."). *But see Dep't of Human Servs. v. Three Affiliated Tribes of Fort Berthold Reservation*, 236 Or. App. 535, 552, n.17 (2010) (disagreeing in a footnote with a "passing" argument advocating clear and convincing evidence standard, noting that under Oregon law, a preponderance of the evidence standard applies to permanency hearings).

**¶19** Based on these authorities, we are persuaded that the heightened standard of "clear and convincing" evidence should apply when Arizona courts decide whether good cause exists to deviate from ICWA foster or adoptive placement preferences. Because it is unclear what standard of proof the juvenile court applied here, we remand the good cause determination for reconsideration. Although we need not reach some of the parties' remaining arguments, we address certain issues likely to recur on remand.

## II. Good Cause Determination

**¶20** ICWA does not define "good cause" in the relevant context. And while the Guidelines offer non-binding guidance, good cause is ultimately a matter of discretion, which is to be exercised in light of myriad factors specific to a given case. *See Navajo Nation*, 230 Ariz. at 345–46, ¶¶ 19, 24. Appellate courts review good cause determinations for an abuse of discretion. *Id.* at 343, ¶ 14.

**¶21** To the extent the Community contends state courts may only consider factors enumerated in the Guidelines, we disagree.[5] We have previously held that Arizona courts are not so limited and may, for example, consider bonding between a child and his or her foster parents. *See Navajo Nation*, 230 Ariz. at 345–46, ¶¶ 20, 25 (Court may consider bonding in assessing good cause because Guidelines "are not exclusive

---

[5] The Guidelines limit consideration to four factors: (1) the parents' requests; (2) the child's request; (3) "extraordinary physical or emotional needs of the child," which "does not include ordinary bonding or attachment that may have occurred as a result of a placement or the fact that the child has, for an extended amount of time, been in another placement that does not comply with the Act;" and (4) unavailability of a placement after a showing by the agency and a determination by the court "that active efforts have been made to find placements meeting the preference criteria, but none have been located." Guidelines at 10158.

and are advisory in nature, so we need not limit our inquiry for good cause to these factors."); *see also Maricopa Cty. Juv. Action No. A-25525*, 136 Ariz. 528, 534 (App. 1983) ("It is patently clear that Congress envisioned situations in which the child's best interest may override a tribal or family interest-the preferences for placement are to be followed absent 'good cause to the contrary.'").[6] And the record simply does not support the Community's argument that the juvenile court relied solely on ordinary bonding. The court cited D.B.'s bond with her foster family as one of several factors it considered in finding good cause to deviate from ICWA placement preferences.

**¶22** Nor did the juvenile court err by relying on opinions and testimony offered by DCS' expert witness — psychologist Al Silberman — even though his opinions differed in some respects from those of Byron Donahue, ICWA case manager for the Community. A trial court has broad discretion in determining whether a witness is competent to testify, *see Lohmeier v. Hammer*, 214 Ariz. 57, 64, ¶ 25 (App. 2006), and if there are reasonable inferences to be drawn from conflicting evidence and disputed facts, an appellate court will not substitute its judgment for that of the trial court, *United Calif. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 302 (App. 1983).

**¶23** It is the role of the juvenile court on remand to weigh the strength and quality of all of the evidence presented, including the testimony of Dr. Silberman and Mr. Donahue, to determine whether DCS established good cause by clear and convincing evidence. *See Hollis v. Indus. Comm'n*, 94 Ariz. 113, 116 (1963) (appellate court does not weigh conflicting evidence). The difference between a preponderance of the evidence standard and proof by clear and convincing evidence is not merely academic. The former "essentially allocates the risk of error equally between the parties involved" because a party need only show that the fact sought to be proved is more probable than not. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005). In contrast, under a clear and convincing evidence standard, "the thing to be proved is highly probable or reasonably certain." *Id.* We leave to the juvenile court's discretion whether to request additional briefing, argument, or evidence in reconsidering its good cause determination.

---

[6] Language from the Guidelines that forbids "independent consideration of the best interest of the Indian child" does not appear in the proposed rule. *Compare* Guidelines at 10158, *with* Regulations at 14892.

## CONCLUSION

¶24 For the reasons stated, we vacate the juvenile court's finding of good cause to deviate from ICWA placement preferences and remand for reconsideration based on a clear and convincing standard of proof.



Ruth A. Willingham · Clerk of the Court
FILED : ama