IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GILA RIVER INDIAN COMMUNITY, *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, SARAH H., JEREMY H., A.D.,
*Appellees*.

No. 1 CA-JV 16-0038
FILED 8-11-2016

Appeal from the Superior Court in Maricopa County
No. JD528014
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Office of General Counsel for the Gila River Indian Community, Sacaton
By Linus Everling, Thomas L. Murphy, Mandy Cisneros
*Co-Counsel for Appellant Gila River Indian Community*

Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg, L.L.P., Tempe
By April E. Olson
*Co-Counsel for Appellant Gila River Indian Community*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix
By James Manley, Aditya Dynar
*Counsel for Appellees S.H. and J.H.*

Office of the Legal Advocate, Phoenix
By Tiffany Mastin
*Guardian ad Litem for Appellee A.D.*

Office of the General Counsel for the Salt River Pima-Maricopa Indian Community, Scottsdale
By Cheryl J. Scott
*Counsel for Amici Curiae Salt River Pima-Maricopa Indian Community, Cherokee Nation, and the Native American Bar Association of Arizona*

---

## OPINION

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**W I N T H R O P**, Judge:

¶1      Following termination of the parental rights of the biological parents of A.D., an Indian child and eligible member of the Gila River Indian Community ("the Community"),[1] the Community moved for an order transferring jurisdiction of the matter to its Children's Court. The Maricopa County Juvenile Court denied the motion, and the Community appealed. We hold that 25 U.S.C. § 1911(b) of the Indian Child Welfare Act ("ICWA"),[2] which the Community argues requires transfer, does not allow

---

[1]      The Community is a federally recognized Indian tribe.

[2]      ICWA is a federal statute enacted to address "the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." Memorandum from the United States Department of the Interior's Office of the Solicitor on "Implementation of the Child Welfare Act by Legislative Rule" (June 8, 2016) ("2016 Memorandum"). ICWA is codified at 25 U.S.C. §§ 1901 to 1963. *See also*

jurisdiction to be transferred after parental rights have been terminated. Accordingly, we affirm the denial of the motion to transfer jurisdiction.

## FACTS AND PROCEDURAL HISTORY[3]

### I. *The Underlying Proceedings*

¶2 At the time of A.D.'s birth in 2014, both she and her biological mother ("M.D.") tested positive for amphetamines and opiates.[4] Approximately one week later, the Arizona Department of Child Safety ("DCS") removed her from the hospital and placed her with S.H. and J.H. ("the foster parents"), with whom she has since remained.[5]

---

Bureau of Indian Affairs' Indian Child Welfare Act Proceedings: Final Rule, 81 Fed. Reg. 38778-38876 (June 14, 2016) (eff. Dec. 12, 2016) (to be codified at 25 C.F.R. pt. 23) ("2016 BIA Final Rule"); Bureau of Indian Affairs' Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10146-10159 (Feb. 25, 2015) ("2015 BIA Guidelines").

[3] In general, we view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[4] M.D. is a member of the Community. At the time of A.D.'s birth, M.D. was not married, and the identity of A.D.'s biological father was never positively established. The record is unclear whether A.D. is actually enrolled or is simply eligible to enroll as a member of the Community. In either event, she qualifies as an "Indian child" for purposes of ICWA. *See* 25 U.S.C. § 1903(4) ("'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"); *see also* 2016 Memorandum at 3 n.18.

[5] The foster parents are non-Indians (and thus non-ICWA placement preference compliant, *see* 25 U.S.C. § 1915) who adopted another Indian child in 2013. By all accounts, A.D. is bonded with her foster family. The family resides in Maricopa County, and not within the Community's boundaries; accordingly, because A.D. has never resided or been domiciled within the Community's reservation, the Community could not exercise

¶3 On August 27, 2014, DCS filed a dependency petition on behalf of A.D. The Community was provided notice of the dependency proceedings, and on October 3, 2014, formally moved to intervene pursuant to 25 U.S.C. § 1911(c).[6] The juvenile court granted the motion to intervene, and the Community continued to be involved throughout the case.

¶4 On February 20, 2015, the juvenile court found A.D. dependent.[7] Pursuant to DCS's request, the court ordered a case plan of severance and adoption, and on March 4, 2015, DCS moved for termination of the parent-child relationship. The Community received notice of the motion for termination. *See* 25 U.S.C. § 1912.

¶5 On March 18, 2015, the juvenile court terminated the parental rights of A.D.'s biological parents. At that time, the court found the foster parents were an adoptive placement meeting all of A.D.'s needs. The court also found the foster parents had demonstrated a willingness to honor A.D.'s cultural heritage, including by making arrangements to ensure her continued exposure to the Community's culture. The Community had not provided an alternative ICWA-compliant placement and agreed that good cause existed to deviate from the ICWA placement preferences.[8] *See* 25

exclusive jurisdiction over A.D. *See* 25 U.S.C. § 1911(a). Nonetheless, the Community did not object to placement of A.D. with the foster parents; nor has the Community objected to A.D. remaining with them during the course of these proceedings.

[6] Under 25 U.S.C. § 1911(c), "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding."

[7] By February 2015, the foster parents had indicated they wanted to adopt A.D. if her biological parents' rights were terminated. Meanwhile, the Community sought to find an ICWA-compliant placement, but a maternal aunt identified as a possible placement did not pass the necessary background check.

[8] The Community requested A.D. remain in her current placement until an ICWA-compliant placement could be identified, and thereafter, the Community made further unsuccessful efforts to identify a placement compliant with ICWA preferences.

U.S.C. § 1915(a)-(b). DCS, as the legal guardian of A.D., was granted authority by the juvenile court to consent to her adoption. No objection or notice of appeal was filed challenging termination of the biological parents' parental rights.

¶6　　　On June 2, 2015, the foster parents moved to intervene under Rule 24, Ariz. R. Civ. P., and expressed a desire to adopt A.D. At a June 5 Report and Review hearing, the Community requested additional time to respond in writing to the motion to intervene, but failed to file a response, and the juvenile court granted the foster parents' motion to intervene. Soon thereafter, the foster parents filed a petition to adopt A.D., and although adoption hearings were scheduled, the juvenile court granted the Community's motion to stay the adoption proceedings.

　　　　　II.　　　*The Motion to Transfer Jurisdiction*

¶7　　　On August 18, 2015, the Community moved to transfer jurisdiction of the remaining proceedings to the Community's Children's Court pursuant to 25 U.S.C. § 1911(b).[9] In its motion, the Community noted that the State of Arizona, through DCS, supported the motion, but the foster parents and A.D.'s guardian ad litem ("GAL") objected to the motion.[10] The GAL filed a written objection to the motion to transfer on September 11, 2015, and, pursuant to the juvenile court's minute entry order issued after the September 29 Report and Review hearing, the foster parents filed a response to the motion to transfer on October 13, 2015.

¶8　　　On December 9, 2015, and January 5, 2016, the juvenile court heard testimony on whether good cause existed to deny the Community's

---

[9]　　　The Community also filed a motion to change the physical custody of A.D. to a placement within the Community, but withdrew that motion on September 29, 2015, after its proposed placement "fell through."

[10]　　　Meanwhile, pursuant to an August 11, 2015 Report and Review hearing, the juvenile court issued a minute entry filed August 24 in which the court held in abeyance the foster parents' "Motion to Compel, or alternatively, to Waive, Consent" for A.D. to be adopted, pending jurisdiction being established, and scheduled a Report and Review hearing on September 29, 2015, and evidentiary hearings on December 9, 2015, and January 5, 2016.

motion to transfer jurisdiction.[11] *See generally* 25 U.S.C. § 1911(b). Both sides offered evidence regarding several factors, including whether the Community's Children's Court was a convenient forum, the degree to which A.D. had bonded with her foster family, and the possible effects of a potential change in placement for A.D., after which the juvenile court took the matter under advisement.

### III. The Under Advisement Ruling

**¶9** In a ruling filed January 29, 2016, the juvenile court denied the Community's motion to transfer jurisdiction after concluding the GAL and foster parents had established good cause to deny the motion by clear and convincing evidence. The court based its ruling in part on the possible harmful effects of a potential change in placement for A.D.

**¶10** The Community filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 8-235(A) (2014) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

**¶11** Noting that the 2015 BIA Guidelines provide that a potential change in placement is not a ground for good cause to deny a motion to transfer,[12] the Community argues the juvenile court erred in finding good

---

[11] Near the completion of the January 5 hearing, the Community's ICWA social worker identified for the first time an unnamed potential ICWA-compliant placement who was purportedly culturally related to A.D. That placement had no contact with A.D., however, and the Community does not mention that potential placement on appeal.

[12] *See* 2015 BIA Guidelines, 80 Fed. Reg. 10156, C.3.(c) ("In determining whether good cause exists, the court may not consider whether the case is at an advanced stage or whether transfer would result in a change in the placement of the child . . . ."). "Although the Guidelines are not binding, we nonetheless consider them when interpreting ICWA." *Gila River Indian Cmty. v. Dep't of Child Safety*, 238 Ariz. 531, 535, ¶ 16, 363 P.3d 148, 152 (App. 2015). Moreover, the 2016 BIA Final Rule, issued June 14, 2016, and effective December 12, 2016, is instructive. "The final rule prohibits a finding of good cause based on predictions of whether the transfer could result in a change in the placement of the child[.]" 2016 BIA Final Rule, 81 Fed. Reg. 38822, J.

cause to deny its motion to transfer jurisdiction to the Community's Children's Court. We need not directly address this issue, however, or the numerous additional arguments raised by the parties[13] and amici because we find one threshold issue dispositive:[14] Does 25 U.S.C. § 1911(b) of ICWA allow transfer to tribal court of state preadoptive and adoptive placement proceedings occurring after parental rights have terminated? We answer that question in the negative.

> *I.* *Standard of Review*

**¶12** We review *de novo* the application and interpretation of the law, including statutes. *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 10, 198 P.3d 1203, 1206 (2009); *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 156, ¶ 7, 7 P.3d 960, 962 (App. 2000). As a general rule, we look to the plain language of a statute because it is the best evidence of legislative intent. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 12, 109 P.3d 97, 99 (App. 2005); *In re Adam P.*, 201 Ariz. 289, 291, ¶ 12, 34 P.3d 398, 400 (App. 2001). Only if the plain meaning of the language is not clear do we consider other factors, such as the context of the statute, its historical background, its effects and consequences, and the spirit and purpose of the law. *State v. Garza Rodriguez*, 164 Ariz. 107, 112, 791 P.2d 633, 638 (1990); *Estate of Jung*, 210 Ariz. at 204, ¶ 12, 109 P.3d at 99. Also, when possible, we interpret statutory language in a way that gives meaning to each word and clause, and avoids making any part of a statute superfluous, contradictory, void, or insignificant. *See Devenir Assocs. v. City of Phoenix*, 169 Ariz. 500, 503, 821

---

[13] At the December 9, 2015 evidentiary hearing, DCS argued that neither the GAL nor the foster parents had standing to object to the motion to transfer jurisdiction. On appeal, the Community again raises the issue, arguing the GAL and foster parents lack standing under 25 U.S.C. § 1911(b) to challenge the transfer. We disagree. The GAL advocates for A.D., who is a party, and the juvenile court granted the foster parents' motion to intervene pursuant to Rule 24, Ariz. R. Civ. P. Accordingly, both are parties in this case. *See* Ariz. R.P. Juv. Ct. 37(A).

[14] This court will affirm the juvenile court's decision if correct for any reason. *See Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9, 130 P.3d 538, 540 (App. 2006); *Haynes v. Syntek Fin. Corp.*, 184 Ariz. 332, 337, 909 P.2d 399, 404 (App. 1995) ("[W]e will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court.").

P.2d 161, 164 (1991); *Garza Rodriguez*, 164 Ariz. at 112, 791 P.2d at 638; *State v. Johnson*, 171 Ariz. 39, 42, 827 P.2d 1134, 1137 (App. 1992).

## II.    Discussion

¶13    For purposes of our discussion, we bear in mind that the progression of A.D.'s case has involved separate and distinct juvenile court proceedings, each with its own statutory requirements. DCS obtained temporary physical custody of A.D. in August 2014, *see* A.R.S. § 8-821 (Supp. 2015), placed A.D. in a licensed foster home for care, *see* A.R.S. § 8-514 (Supp. 2015), and filed a dependency petition, *see* A.R.S. § 8-841 (2014). After the court found A.D. dependent, DCS moved for termination of parental rights pursuant to A.R.S. § 8-533(B)(1), (3), and (8)(b) (Supp. 2015). The court then terminated the rights of the biological parents, placed A.D. in the legal care, custody, and control of DCS, affirmed the current placement (the foster parents) as an adoptive placement, and ordered DCS to carry out a plan for permanent placement. The foster parents later filed a petition to adopt A.D. *See* A.R.S. § 8-109 (2014).[15] Only then did the Community seek to transfer jurisdiction from the juvenile court to the Community's Children's Court pursuant to 25 U.S.C. § 1911(b).

¶14    Subsection (b) of 25 U.S.C. § 1911 provides as follows:

**(b) Transfer of proceedings; declination by tribal court**

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

¶15    As the plain language of 25 U.S.C. § 1911(b) provides, "state court proceedings are required to be transferred to tribal jurisdiction where 'foster care placement' or 'termination of parental rights' is the matter at issue." *In re A.P.*, 962 P.2d 1186, 1189, ¶ 19 (Mont. 1998). As the Supreme

---

[15]    Provisions regarding dependency are found in Chapter 4, Articles 8-10, of Title 8 of the Arizona Revised Statutes, while provisions regarding termination of parental rights are found in Chapter 4, Article 5, and provisions regarding adoption are found in Chapter 1 of Title 8.

Court noted in *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989):

> At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. Section 1911 lays out a dual jurisdictional scheme. Section 1911(a) establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child "who resides or is domiciled within the reservation of such tribe," as well as for wards of tribal courts regardless of domicile. Section 1911(b), on the other hand, creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings for *foster care placement* or *termination of parental rights* are to be transferred to the tribal court, except in cases of "good cause," objection by either parent, or declination of jurisdiction by the tribal court.

(Footnote omitted; emphasis added.)

¶16        Under ICWA, a "child custody proceeding" includes foster care placement, termination of parental rights proceedings, preadoptive placement, and adoptive placement of an Indian child. 25 U.S.C. § 1903(1). Each of these four terms is specifically defined within the statute, and these federal definitions of child custody proceedings generally are consistent with state court proceedings involving an Indian child, though they may be labeled differently under state law. *See In re Guardianship of Ashley Elizabeth R.*, 863 P.2d 451, 453 (N.M. Ct. App. 1993) (determining that a state guardianship petition fits the ICWA definition of a foster care placement).

¶17        ICWA defines the term "foster care placement" as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but *where parental rights have not been terminated*." 25 U.S.C. § 1903(1)(i) (emphasis added). ICWA further defines the term "termination of parental rights" as "any action resulting in the termination of the parent-child relationship." 25 U.S.C. § 1903(1)(ii). Accordingly, under § 1911(b), ICWA provides only for transfer of state juvenile court proceedings before termination of parental rights, and not for post-

termination preadoptive and adoptive placements.[16] *See In re A.P.*, 962 P.2d at 1189, ¶ 20.

¶18　　　In this case, neither A.D.'s biological parents nor the Community sought to transfer the proceedings from the juvenile court to the Community's Children's Court before termination of parental rights.[17] By the time the Community moved to transfer, A.D.'s case had progressed to the point where the biological parents' rights had been terminated and legal custody had been permanently placed with DCS, the juvenile court had found the foster parents were an adoptive placement, and the court had authorized DCS to facilitate permanent placement of A.D. through adoption. Further, an adoption petition had been filed. By not moving to transfer jurisdiction before termination of the biological parents' rights, the Community effectively waived its right to seek transfer of jurisdiction under 25 U.S.C. § 1911(b).

¶19　　　Although no court in Arizona has previously addressed this issue, our conclusion is supported by the decisions of other state courts interpreting ICWA and the plain language of 25 U.S.C. § 1911(b). Courts examining this question have concluded that the transfer provision of 25 U.S.C. § 1911(b) only applies to foster care placement proceedings and termination of parental rights proceedings, and does not apply to proceedings following the termination of parental rights. *See In re A.P.*, 962 P.2d at 1191, ¶ 28; *In re Welfare of the Child of R.S. & L.S.*, 805 N.W.2d 44, 50-51 (Minn. 2011); *In re J.B.*, 900 P.2d 1014, 1016 (Okla. Civ. App. 1995), *overruled by In re M.S. & K.S.*, 237 P.3d 161, 167, ¶ 19 (Okla. 2010); *see also Thompson v. Fairfax Cty. Dep't of Family Servs.*, 747 S.E.2d 838, 853 (Va. Ct. App. 2013) ("ICWA allows tribes to seek the transfer to a tribal court in two kinds of proceedings: 'foster care placement' and 'termination of parental rights.'"); *Nebraska v. Elise M. (In re Zylena R.)*, 825 N.W.2d 173, 182 (Neb. 2012) ("[W]e conclude that ICWA . . . contemplate[s] four different types of child custody proceedings, two of which must be transferred from a state

---

[16]　　　Further, ICWA defines the term "preadoptive placement" as "the temporary placement of an Indian child in a foster home or institution *after the termination of parental rights*, but prior to or in lieu of adoptive placement," and defines "adoptive placement" as "the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption." 25 U.S.C. § 1903(1)(iii-iv) (emphasis added).

[17]　　　We also note the Community did not object to the proceedings taking place in juvenile court or to the placement orders, and did not appeal the court's order terminating parental rights.

court to a tribal court upon proper motion in the absence of good cause to the contrary. . . . The State's argument that a foster care placement proceeding and a termination of parental rights proceeding are a single 'proceeding' . . . is inconsistent with the plain language of ICWA . . . ."); *but see In re M.S. & K.S.*, 237 P.3d at 166, ¶ 14 (holding that 25 U.S.C. § 1911(b) does not preclude tribal court jurisdiction when transfer is requested after parental rights are terminated). The 2016 BIA Final Rule is also instructive and supports our view. *See* 2016 BIA Final Rule, 81 Fed. Reg. 38822, J(1), Response to Comment ("Like the statute, the final rule addresses transfer of foster-care-placement and termination-of-parental-rights proceedings. *See* FR § 23.115; 25 U.S.C. 1911(b)."); 38823, (J)(1), Response to Comment ("The final rule clarifies in the definitions that, as relevant here, a 'proceeding' is a foster-care-placement or termination-of-parental rights proceeding.").

¶20        As the Minnesota Supreme Court explained in *In re Welfare of the Child of R.S. & L.S.*:

> We are persuaded that Congress did not intend to permit the transfer of adoptive and preadoptive placement proceedings to tribal courts. We cannot assume that, having specifically used a term in section 1911(a) — "child custody proceeding" — that *includes* preadoptive and adoptive proceedings, Congress was simply careless in using terms in section 1911(b) — "foster care placement" and "termination of parental rights" — that *exclude* preadoptive and adoptive placement proceedings. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").
>
> Rather, we are bound by the plain language of the statute. Under the plain language of 25 U.S.C. § 1911(b), tribal courts have presumptive jurisdiction over two types of child custody proceedings — foster care placement and termination of parental rights — involving Indian children who do not reside and are not domiciled on their tribe's reservation. But, again under the plain language of 25 U.S.C. § 1911(b), Congress has not granted tribal courts jurisdiction over preadoptive and adoptive placement proceedings involving Indian children who do not reside and are not domiciled on their tribe's reservation. Where a statute is clearly limited to specifically

11

enumerated subjects, we do not extend its application to other subjects by process of construction. *Martinco v. Hastings*, 265 Minn. 490, 495, 122 N.W.2d 631, 637 (1963).

The [Minnesota] court of appeals concluded that because section 1911(b) neither expressly requires nor expressly prohibits transfer of other types of child custody proceedings—preadoptive and adoptive placement proceedings—the statute was ambiguous. 793 N.W.2d at 757. We disagree. "[S]ilence in a statute regarding a particular topic does not render the statute unclear or ambiguous unless the statute is susceptible of more than one reasonable interpretation." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010). Moreover, we do not read the differing language in the two subsections as congressional "silence." Rather, we read the differing language as drawing an express distinction between foster care and termination of parental rights proceedings on the one hand, and preadoptive and adoptive placement proceedings on the other.

The differing language in the two subsections cannot be read in isolation from the other provisions of ICWA. *See State v. Gaiovnik*, 794 N.W.2d 643, 647 (Minn. 2011) ("When interpreting statutes, we do not examine different provisions in isolation.")[.] We construe statutes "as a whole" and "in the light of their context." *See Christensen v. Hennepin Transp. Co., Inc.*, 215 Minn. 394, 409, 10 N.W.2d 406, 415 (1943). As discussed above, Congress distinguished among the four types of child custody proceedings—foster care placement, termination of parental rights, preadoptive placement, and adoptive placement—throughout ICWA. For example, it required the "testimony of qualified expert witnesses" in foster care placement and termination of parental rights proceedings, but not in preadoptive and adoptive placement proceedings. 25 U.S.C. § 1912(e), (f). It allowed for the invalidation of foster care placement and termination of parental rights for violation of certain procedural provisions of ICWA, but did not permit the invalidation of preadoptive or adoptive placements. 25 U.S.C. § 1914. It gave the child's tribe the right to notice and intervention in foster care and termination proceedings, but not adoption proceedings. *See* 25 U.S.C. §§ 1911(b), 1912(a). These distinctions support our conclusion that in 25 U.S.C. § 1911(b), Congress intended to

limit the types of child custody proceedings that can be transferred to tribal courts to foster care placement and termination of parental rights.

805 N.W.2d at 50-52 (rejecting any suggestion that 25 U.S.C. § 1911(b) is ambiguous).

**¶21** In this case, the Community filed its motion to transfer jurisdiction from the juvenile court to the Community's Children's Court after the termination, and at a time when there were no foster care placement or active termination of parental rights proceedings before the court. The Community's motion relied solely on 25 U.S.C. § 1911(b) as authority for its claim of presumptive jurisdiction. Under the plain language of ICWA, however, the Community was precluded from relying on § 1911(b) to assume jurisdiction through a motion to transfer the proceedings.[18] The juvenile court therefore did not err in denying the Community's motion to transfer jurisdiction.

---

[18] Because the Community sought transfer of jurisdiction only under the authority of 25 U.S.C. § 1911(b), we do not analyze or address the propriety of such a motion under any other authority. *See In re Welfare of the Child of R.S. & L.S.*, 805 N.W.2d at 57 (Dietzen, J., concurring) ("The court's consideration of those issues is dictum and not binding on the court."). *See also* 2016 BIA Final Rule, 81 Fed. Reg. 38822, J(1), Response to Comment ("Parties may request transfer of preadoptive and adoptive placement proceedings, but the standards for addressing such motions are not dictated by ICWA or these regulations. Tribes possess inherent jurisdiction over domestic relations, including the welfare of child citizens of the Tribe, even beyond that authority confirmed in ICWA. . . . Thus, it may be appropriate to transfer preadoptive and adoptive proceedings involving children residing outside of a reservation to Tribal jurisdiction in particular circumstances." (citations omitted)); 25 U.S.C. § 1902 (providing a Congressional declaration of policy stating that ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture").

## CONCLUSION

¶22      The juvenile court's order denying the Community's motion to transfer jurisdiction pursuant to 25 U.S.C. § 1911(b) is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA