NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JIMMIE G., SALLY G.,
*Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY. K.G., J.G., M.G.,
*Appellees*.

No. 1 CA-JV 16-0494
FILED 6-1-2017

Appeal from the Superior Court in Maricopa County
No. JD506140
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Jimmie G.*

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Sally G.*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee DCS*

_____

**MEMORANDUM DECISION**

_____

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.[1]

_____

**J O H N S E N**, Judge:

**¶1**        Jimmie G. ("Father") appeals the superior court's order terminating his parental rights to his three children.  Father's mother, Sally G. ("Grandmother"), appeals the superior court's revocation of her guardianship of the children.  For the following reasons, we affirm both orders.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Father is the biological father of three children, born in October 2004, October 2005 and January 2007, respectively.  The children are eligible for membership in the Cherokee Nation and therefore are Indian children, pursuant to the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. §§ 1901-1963 (2012).

**¶3**        When the middle child was born substance-exposed, the Department of Child Safety ("DCS") initiated in-home services for the family.  All three children eventually were adjudicated dependent as to Father and removed from the home.[2]  The children remained in out-of-home placement until July 2007, when DCS placed them with Grandmother.  The court appointed Grandmother as permanent guardian in January 2008, and DCS dismissed the dependency petition against Father.

**¶4**        Over time, DCS received multiple reports that Father physically abused the children while they were in Grandmother's care.  Grandmother allowed Father to move back in with her and the children,

_____

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        The children's mother has been incarcerated since 2011.  The court terminated her parental rights in November 2016, and she is not a party to this appeal.

despite substantiated reports that he was abusing the children.  In March 2014, after one of the children disclosed abuse to her school counselor, DCS took custody of the children once again and filed a petition alleging the children were dependent as to both Father and Grandmother.

**¶5**        DCS offered Father reunification services including substance-abuse treatment and testing, and offered both Father and Grandmother parent-aide services, parenting education, psychological evaluations, individual counseling, group counseling, child and family therapy, visitation and transportation.

**¶6**        In August 2015, DCS filed a motion to terminate Father's parental rights based on chronic substance abuse and out-of-home placement pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), (B)(8)(a) and (B)(8)(c) (2017).[3]  It also filed a motion to revoke Grandmother's permanent guardianship.

**¶7**        After a combined hearing in May 2016, the superior court terminated Father's parental rights and revoked Grandmother's guardianship.  Both Father and Grandmother timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and pursuant to A.R.S. §§ 8-235(A) (2017), 12-2101(A)(1) (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### A.    Legal Principles.

**¶8**        The right to custody of one's children is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8-533(B).  *Michael J.*, 196 Ariz. at 249, ¶ 12.  The court also must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶9**        We review the superior court's order for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make

---

[3]      Absent material revision after the relevant date, we cite a statute's current version.

appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## B.     Termination of Father's Parental Rights.

### 1.     Active efforts.

**¶10**     Father does not argue there was insufficient evidence to prove the statutory grounds of chronic substance abuse or out-of-home placement. He argues only that the State failed to satisfy ICWA's requirement of unsuccessful active efforts to prevent the breakup of the Indian family, and that termination of his parental rights is not in the children's best interests.

**¶11**     ICWA requires a party seeking to terminate parental rights to show, by clear and convincing evidence, that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d); *accord* Ariz. R.P. Juv. Ct. 66(C); *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 (App. 2011) (burden of proof is by clear and convincing evidence). The parent need not be provided with every imaginable service designed to prevent the breakup of the Indian family before the court may find that "active efforts" took place. *Yvonne L.*, 227 Ariz. at 423, ¶ 34. Rather, parents must be provided with the necessary "time and opportunity to participate in programs designed to help" them become effective parents. *Id.* (quoting *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

**¶12**     At the hearing, a Cherokee Indian child welfare specialist testified active efforts were made to provide remedial services and programs designed to prevent the breakup of the Indian family, and they proved unsuccessful.

**¶13**     Father contends, however, that DCS did not satisfy the active-efforts requirement because it failed to refer him for in-patient substance-abuse treatment, which he obtained on his own just a few months preceding the termination hearing. For this reason, he argues, DCS should be estopped from asserting that his participation in reunification services was "too little too late." Moreover, Father argues the residential treatment he completed "appeared to have been effective" because he "had been clean for three months through the date of trial."

¶14 Reasonable evidence supports the superior court's finding that active efforts were made to provide services and programs designed to prevent the breakup of the Indian family and that they were unsuccessful. Father was offered substance-abuse treatment services throughout the dependency. He completed one substance-abuse program in 2014, but relapsed in early 2015 when he tested positive for methamphetamine and marijuana. He was re-referred for more treatment and assigned to intensive outpatient treatment, but that service was closed out in early 2016 because he failed to complete it successfully.

¶15 Even if DCS had referred Father for residential treatment earlier in these proceedings, there are strong indications in the record that he would not have satisfied the requirements for admission and would not have completed the program. Father was on a wait-list for residential treatment in June 2015. DCS asked him to continue outpatient treatment until residential treatment could begin, but Father declined to do so. In fact, as noted above, Father's most recent outpatient substance-abuse treatment referral closed out in early 2016 due to his non-compliance. A residential treatment referral in December 2015 failed for the same reason.

¶16 Moreover, on appeal, Father does not address the multitude of other reunification services DCS offered him, but which proved unsuccessful because he failed to complete them. Father was closed out of parent-aide referrals in March 2015 and in April 2016 because he failed to make the required behavioral changes. The psychologist who evaluated him recommended individual counseling, but Father failed to complete his counseling treatment goals. Father routinely failed to participate in child and family team meetings. DCS inquired with the provider about family therapy for Father, but the provider did not recommend family therapy due to Father's minimal progress in participating in child and family team meetings.

¶17 In sum, reasonable evidence supports the superior court's findings by clear and convincing evidence that DCS made active efforts to provide remedial programs designed to prevent the breakup of the Indian family, and that those efforts were unsuccessful.

## 2. Best interests of the children.

¶18 The superior court also found by a preponderance of the evidence that termination of Father's rights is in the best interests of the children. Father challenges this finding, arguing, *inter alia*, that termination of his rights will result in separating the children from each other.

**¶19**        "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis omitted).  Factors that support a finding that a child would benefit from termination of parental rights include evidence of an adoption plan or that a child is adoptable, or that the existing placement is meeting the child's needs. *JS-501904*, 180 Ariz. at 352; *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

**¶20**        Reasonable evidence supports the court's finding that severance was in the children's best interests.  By the time of the hearing, the children had been in out-of-home placement for more than two years. The case worker testified the children would benefit from termination because "it would allow the children to be free and legally adoptable, and provide them the permanency that they need, and provide them a normal childhood . . . free of substance abuse and physical abuse."  She testified two of the children are together in an adoptive placement that meets their needs, and they are adoptable.  She testified that while the third child is not currently in an adoptive placement because of "significant behavioral concerns," DCS is pursuing a potential adoptive placement with the child's maternal uncle; in the meantime, the child's current placement meets her needs and will keep her for as long as needed.  The case worker testified that the third child is adoptable "so long as there is continuity of services." The case worker also testified that "since this is an ICWA case . . . we want to keep siblings together," but that the maternal uncle could not take all three children, and DCS was unable to find another placement with family or with the Cherokee Nation.

**¶21**        The superior court found two of the children were in an adoptive placement that can meet their needs, and "although [the third child] is not in an adoptive placement, . . . she is an adoptable child."  The court further found that the children cannot be safely returned to either parent, and termination will enable the children "to move towards obtaining . . . permanency."  Although a single adoptive placement for all three children might not be possible, there is very little evidence in the record in support of Father's contention that, contrary to the court's findings, it is in the children's best interests to be returned to his custody.

## C.    Revocation of Guardianship.

**¶22**        The superior court found by clear and convincing evidence that there was a change in circumstances warranting the revocation of Grandmother's guardianship, and that revocation is in the children's best

interests. Grandmother does not challenge these findings, or the finding that DCS made active efforts to prevent the breakup of the Indian family and that those efforts were unsuccessful. Grandmother argues, however, that the court erred by imposing an incorrect burden of proof—clear and convincing evidence—on a revocation proceeding involving Indian children. She argues the burden of proof in a guardianship revocation proceeding subject to ICWA should be "beyond a reasonable doubt." We examine the burden-of-proof requirement *de novo*. *See Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 10 (2009).

**¶23** Grandmother's argument is based on A.R.S. § 8-872 (2017), the statute under which a permanent guardianship may be established. Our primary goal in construing a statute is to determine and give effect to the intent of the legislature. *In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 12 (App. 2005). We first consider the language of the statute itself. *Id.* "If the statutory language is unambiguous, we must give effect to the language and do not use other rules of statutory construction in its interpretation." *Primary Consultants, L.L.C. v. Maricopa County Recorder*, 210 Ariz. 393, 399, ¶ 24 (App. 2005). If the plain meaning is not clear, "we examine statutes that are *in pari materia*, meaning those of the same subject or general purpose." *State v. Francis*, 241 Ariz. 449, 451, ¶ 8 (App. 2017).

**¶24** Under § 8-872, the burden of proof is specified as follows for the creation of a guardianship:

> The person who files the motion [for permanent guardianship] has the burden of proof by clear and convincing evidence. *In any proceeding involving a child who is subject to the federal Indian child welfare act of 1978, the person who files the motion has the burden of proof by beyond a reasonable doubt.*

A.R.S. § 8-872(F) (emphasis added). Grandmother argues that because a higher burden is imposed on one who is seeking to impose a permanent guardianship of an Indian child, a higher burden should be imposed on one seeking to revoke a permanent guardianship of an Indian child.

**¶25** But the plain language of A.R.S. § 8-873(C) (2017) does not support her argument: "The court may revoke the order granting permanent guardianship if the party petitioning for revocation proves a change of circumstances by clear and convincing evidence and the revocation is in the child's best interest." This provision imposes a "clear

and convincing" standard in all cases concerning revocation of a permanent guardianship for a child. It contains no exception for ICWA cases.

**¶26** Section 8-873(C) is clear enough, but the conclusion that the legislature intended no exception is particularly compelling, given that the legislature expressly provided such an exception in § 8-872(F), applying to the creation of a permanent guardianship. We presume the legislature acts intentionally and purposefully when it includes language in one section of a statute, but omits it in another. *See Gila River Indian Cmty. v. Dep't of Child Safety*, 240 Ariz. 385, 391, ¶ 20 (App. 2016). Because the legislature included the language "beyond a reasonable doubt" in A.R.S. § 8-872(F), but not in A.R.S. § 8-873(C), we apply the law as written. *See Valerie M.*, 219 Ariz. at 161, ¶ 17.

**¶27** Accordingly, the superior court applied the correct burden of proof in determining that circumstances had changed since the court established the children's guardianship.

## CONCLUSION

**¶28** For the foregoing reasons, we affirm the order terminating Father's parental rights and the order revoking Grandmother's guardianship.

