**NAVAJO NATION, Plaintiff,**

v.

**Donald P. HODEL, in his official capacity as Sec. of D.D.I., John Fritz, in his official capacity as Dept. Asst. Sec. for Indian Affairs, Eddie Brown, Chief, Div. Social Services, BIA, US DOI, Defendants.**

No. CIV 85–2029 PHX PGR.

United States District Court,
D. Arizona.

Oct. 14, 1986.

Donna Bradley, Navajo Nation Dept. of Justice, Window Rock, Ariz. for plaintiff.

Paul Corradini, Asst. U.S. Atty., Phoenix, Ariz., for defendants.

## MEMORANDUM AND ORDER

ROSENBLATT, District Judge.

### BACKGROUND

The Indian Child Welfare Act (ICWA), 25 U.S.C. sections 1901 et seq., provides that the Secretary of the Interior "is authorized to make grants to Indian tribes and organizations in the establishment and operation of Indian child and family service programs...." 25 U.S.C. section 1931(a). The ICWA orders the Secretary of the Interior to promulgate rules and regulations to carry out the provisions of the Act. *Id.* at section 1952.

Plaintiff's application for funds under the ICWA for the 1985 fiscal year was denied by the Department of Interior. This lawsuit challenges that denial and the ad-ministrative findings upholding the denial of funds. Plaintiff challenges both the rules and procedures developed by the Department of Interior and the application of those rules and procedures in this case. The Complaint alleges that "the denial of [the] ICWA grant application violates the Due Process and Equal Protection clauses of the United States Constitution, the Indian Child Welfare Act [25 U.S.C. section 1901 et seq.], the Snyder Act [25 U.S.C. section 13], the Administrative Procedures Act [5 U.S.C. section 551 et seq.], the federal government's trust responsibility to Indian tribes and Indian children, and applicable federal regulations and guidelines." Specifically, count one alleges that the Navajo Area Office of the Bureau of Indian Affairs (BIA), which gave plaintiff's application preliminary approval despite the fact that it did not attain a high enough score, failed, *inter alia*, to follow the express regulatory framework of the review process. Count two challenges the authority of the appeals panel and its de novo review of the application. Count three challenges the characterization of the ICWA grant program as competitive and discretionary, and alleges that the government has a trust relationship with the Indians in the administration of the ICWA program. Count four alleges that the technical assistance provided by the BIA was inadequate. Count five challenges the $300,000 limitation on grants. Count six challenges the validity of the appeal decision of the Deputy Assistant Secretary for Indian Affairs of the Department of Interior. Count seven challenges the timing of the grant process. Plaintiff seeks declaratory and injunctive relief.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's lengthy Motion for Summary Judgment can be divided into three general issues. The first issue concerns whether the ICWA and the Snyder Act create a trust relationship between the government and the Indian applicants for ICWA funds, and, if so, whether the regulations con-

tained in 25 C.F.R. sections 23.21 through 23.71 and the procedures used by the BIA in awarding ICWA grants violate that trust relationship. The second general issue concerns the application of the regulations and procedures to this case, specifically whether the initial review process for the grant was improper for failure of the committee to follow the BIA's internal guidelines, and whether the appeals process was flawed. The third general issue concerns whether the $300,000 grant ceiling contained in the regulations violates equal protection.

### 1. Trust Relationship

Plaintiff argues that the ICWA creates a trust relationship between the government and the Indian tribes for purposes of the programs created and funded under the statute. 25 U.S.C. section 1901, labeled "Congressional findings," reads as follows:

> Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people, the Congress finds—
>
> *   *   *   *   *   *
>
> (2) that Congress, through statutes, treaties, and the general course of dealing with Indian tribes, has assumed the responsibility for the protection and preservation of Indian tribes and their resources;
>
> (3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;
>
> *   *   *   *   *   *

25 U.S.C. section 1901. The use of the terms "special relationship" and "trustee," and the description of Indian children as a "resource" for which Congress has "assumed the responsibility [of] protection and preservation," suggests that Congress has assumed a fiduciary relationship.

██ Defendants correctly note that the trust relationship has traditionally existed

as to management of land and natural resources. *See, e.g., United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Defendant argues that the trust relationship should be limited to natural resources. The natural resources cases, however, support plaintiff's position. The ICWA contains the trust "buzzwords" found in the natural resources cases. The categorization of Indian children as "resources" indicates a clear Congressional intent to draw the ICWA within the parameter of the natural resources cases. It is a general rule of statutory construction that courts will not look beyond the clear meaning of express statutory terms unless a literal interpretation would thwart the purpose of the statutory scheme or lead to absurd results. *Brooks v. Donovan,* 699 F.2d 1010 (9th Cir.1983). Defendants do not argue that the literal meaning of the trust language contradicts the statutory intent or leads to absurd results, nor is such a conclusion warranted. The ICWA does create a special trust relationship between the government and the Indians for purposes of the statute.

The Snyder Act, 25 U.S.C. section 13, provides that the BIA shall direct, supervise, and expend funds that Congress appropriates for the benefit of the Indians. Funds for the ICWA are appropriated pursuant to the Snyder Act. 25 U.S.C. section 1933(b). The Supreme Court has enunciated the standard by which the BIA must operate in dispensing limited funds under the Snyder Act. *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). The basic premise is that it is "[t]he overriding duty of our Federal Government to deal fairly with Indians wherever located...." *Id.* at 236, 94 S.Ct. at 1075, 39 L.Ed.2d at 294. The Court held that the Secretary of the Interior had the "power to create reasonable classifications and eligibility requirements in order to allocate the limited funds available to him for [welfare services]." *Id.* at 230, 94 S.Ct. at 1072, 39 L.Ed.2d at 291. The Court further held that the BIA had to "let the [eligibility] standard be generally known so as to as-

sure that it is being applied consistently and so as to avoid both the reality and the appearance of arbitrary denial of benefits to potential beneficiaries." *Id.* at 231, 94 S.Ct. at 1072, 39 L.Ed.2d at 292. Determination of eligibility cannot be made on an *ad hoc* basis. *Id.* at 232, 94 S.Ct. at 1073, 39 L.Ed.2d at 292. While *Ruiz* does not specifically speak in terms of trust relationship, it does provide a standard of care in dealing with Snyder Act funds. The Ninth Circuit has held that the Snyder Act was enacted out of the federal government's "overriding duty of fairness when dealing with Indians, one founded upon a relationship of trust for the benefit of" the Indians. *Fox v. Morton,* 505 F.2d 254, 255 (9th Cir.1974), *citing Seminole Nation v. United States,* 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed.2d 1480 (1942). The Ninth Circuit interpreted *Ruiz* as requiring agencies administering Snyder Act funds to "develop criteria for distribution that are rationally aimed at an equitable division of its funds." *Rincon Band of Mission Indians v. Harris,* 618 F.2d 569, 572 (9th Cir.1980). Plaintiff's Motion for Summary Judgment is granted as to the issue of whether the ICWA and the Snyder Act create a trust relationship between the federal government and the Indians.

Plaintiff argues that the regulations promulgated by the BIA for the administration of the ICWA grant program violate this trust obligation. The general thrust of the argument is that a "competitive" and "discretionary" grant program, *see* 25 C.F.R. section 23.25, is inimical to a fiduciary trust relationship. The court can discern no practical alternative method by which the BIA can fulfill its fiduciary duty to *all* Indian tribes and organizations under the ICWA and the Snyder Act, nor has plaintiff suggested any. There are hundreds of applications for ICWA grants every year. The BIA cannot be expected to know the needs of each applicant without input from the applicants. Nor can the BIA be expected to do independent research into the circumstances and needs of each applicant. The burden of production of information through which the BIA can

rationally distribute limited ICWA funds, as is required by *Ruiz,* cannot be placed on the BIA. The already limited money available for ICWA programs would be decimated by administrative costs.

Plaintiff suggests that the BIA officials with whom it has contact have knowledge of the needs of the Navajo tribe, and that the trust relationship requires the government to take into account everything it knows about the tribe's needs and not base the decision solely on the information in the application. This contradicts plaintiff's argument that the program cannot be discretionary: consideration of unquantified factors adds discretion to the grant program. It appears that there is, in fact, room in the decision-making process for consideration of factors extraneous to the application. Plaintiff's argument that the competitive and discretionary nature of the ICWA grant process as contained in the BIA's regulations violates the ICWA and the Snyder Act fails. Whether the application of these regulations in this case was improper will be discussed below.

Plaintiff also challenges specific aspects of the regulatory scheme. It argues that technical assistance provided by the government should be required to cure all defects in all ICWA applications. Plaintiff apparently loses sight of the fact that even if all applications are perfect, not all can be funded. There will still have to be some decision on need to determine who gets limited funds. Again, the BIA can only reasonably spend so much money on the administrative expense of technical assistance.

Plaintiff also argues that applicants should have the opportunity to correct deficiencies in their applications, with technical assistance provided by the government, *after* they have been evaluated and rejected. Again, even if all applications are perfect, not all applicants will receive funds. Such an abrogation of the filing deadline would exacerbate the lengthy decision-making process that plaintiff challenges elsewhere in its motion.

Plaintiff's Motion for Summary Judgment is denied to the extent that it challenges the validity of the regulations contained in 25 C.F.R. part 23. The question is one of law and there are no disputes as to questions of material fact. Defendants are granted summary judgment as to this issue. Even though defendants have not filed a cross-motion for summary judgment, the court has the .power to grant summary judgment in favor of a party opposing a motion even though there was no formal cross-motion under Rule 56. *Pueblo of Santa Ana v. Mountain States Tel. & Tel. Co.*, 734 F.2d 1402 (10th Cir. 1984).

### 2. Application of Regulations in this Case

Plaintiff argues that the BIA did not follow its own regulations and guidelines in reviewing plaintiff's grant application. Specifically, plaintiff challenges the fact that the review committee failed to meet in quorum as specified by the Guidelines for Submission of the Grant Application under the Indian Child Welfare Act of 1978 (Guidelines) at page 29. The Guidelines state: "Upon completion of the review of each grant application submitted to the Area Office, all Selection Committee members should meet in quorum for the purpose of reviewing each application, negotiating a consolidated application score, to preliminarily approve or disapprove each application and to rank all those approved applications." Guidelines at 29. When plaintiff raised this issue on appeal of the denial of its application, the Deputy Assistant Secretary of Indian Affairs of the BIA replied that the Guidelines are "merely a recommendation since the actual operation of the area program has been left to the discretion of the Area Director...."

■ *Ruiz* states: "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Ruiz*, 415 U.S. at 235, 94 S.Ct. at 1074, 39 L.Ed.2d at 294. *Ruiz* cautions agencies to "avoid both the reality and the appearance of arbitrary denial of benefits to potential beneficiaries." *Id.* at 231, 94 S.Ct. at 1072, 39 L.Ed.2d at 292. The requirement in the Guidelines that the committee meet in quorum was not published in the federal register and is not provided for in the C.F.R. Nonetheless, by publishing this requirement in the Guidelines, the BIA put potential applicants on notice that this particular procedural safeguard would apply to ICWA grant consideration. It is an "internal procedure ... more rigorous that otherwise would be required." *Id.* at 235, 94 S.Ct. at 1074, 39 L.Ed.2d at 294. The failure of the committee to meet in quorum violates the Snyder Act as interpreted by *Ruiz*.

It is not obvious, as plaintiff argues, that the application would have scored high enough if the review committee had met. The record does, however, support the argument that plaintiff was prejudiced by the failure of the committee to meet in quorum. Despite the fact that the composite score of the five individual committee members was 84, one point less than a passing score, the Navajo Area Office of the BIA granted preliminary approval of plaintiff's application "based on assessment of the review panel's comments." The Area Office further stated that "all application criteria were addressed to some extent though two to three of the criteria could have been more effectively presented." This indicates that the Area Office considered the application to have merit, though it was technically flawed. After being instructed by the Deputy Assistant Director to change its finding to preliminary disapproval for failure to score 85 points, the Area Office stated: "Navajo Area Office preliminary decision was partially influenced by Central Office action to upgrade the FY 1984 application from a score of 67 to 85 following a tribal appeal. ... This decision does not retract the review findings that application factors were addressed to one degree or another." Also, the Navajo tribe was the only applicant serviced by the Navajo Area Office of the BIA, and some money is presumably

allotted to each Area Office. All of these factors indicate that the BIA Area Office had an interest in having plaintiff's application achieve a passing score. While there is no guarantee that plaintiff would have received funding even if it had scored 85 or above, the process in determining whether an applicant who scores high enough gets funding is entirely different from the process used when an applicant is preliminarily disapproved by the Area Office. Plaintiff's motion for summary judgment is granted as to this issue.

The court does not have before it sufficient evidence of the workings of the ICWA to fashion an appropriate remedy at this time. Remand to the committee may be available, if the same committee exists. Or perhaps a subsequent committee has been empaneled which could review plaintiff's 1985 application. Plaintiff is to submit to the court on or before November 3, 1986 a supplemental memorandum in support of its Motion for Summary Judgment addressing the issue of appropriate remedy. Defendants' response and plaintiff's reply shall be filed according to the time limits of Rule 11(d) and (e) of the Rules of Practice of the United States District Court for the District of Arizona and the Federal Rules of Civil Procedure.

■ Plaintiff raises several other challenges to the procedures by which its application was evaluated. Plaintiff challenges the use of the score of 85 as the minimum because the score was never published in the Federal Register pursuant to the Administrative Procedures Act. 25 C.F.R. section 23.27(c)(2) does provide for a minimum competitive score that is to be "established by the Central office prior to each application period." The minimum score of 85 is specified in the Guidelines. Plaintiff's Motion for Summary Judgment is denied and summary judgment is granted in favor of defendants as to this issue.

■ Plaintiff also alleges that the technical assistance provided to it by the BIA in this case was inadequate. Defendants have filed an affidavit of Nancy Evans, Supervisor of Social Service Programs within the Navajo Area, who provided technical assistance to plaintiff, which lists the assistance that she provided to plaintiff. Defendants state that the affidavit proves that the assistance was adequate. Plaintiff states that the affidavit shows that it was inadequate in that it shows that there was never a meeting with the tribe in the development and completion of the application. This issue presents a dispute as to facts that cannot be resolved through summary judgment. Plaintiff's motion is denied as to this issue.

Plaintiff also challenges the handling of the administrative appeal of its denial of benefits. The claim is essentially that the appellate procedures used by the BIA were never published in the Federal Register as is required by the Administrative Procedures Act, 5 U.S.C. section 552. Plaintiff argues that there are administrative appeal procedures in the C.F.R., see 25 C.F.R. section 23.33, but that the appeals review board and the de novo review applied to this case are not included in those regulations. Plaintiff also argues that the appeals officer was biased by the fact that the money at issue in the appeal had already been obligated to another grantee when plaintiff's appeal came before him. Plaintiff further argues that the appeals panel made factual errors in its findings. The court need not reach the validity of the appeals procedure employed in light of the finding that the initial grant review process was flawed. Any future appeal will necessarily be on a different footing than the one challenged here.

3. The $300,000 Funding Limit

■ Plaintiff argues that the $300,000 grant ceiling violates equal protection, the trust responsibility, and the Snyder Act. Plaintiff states that the BIA's formula for determining the amount of funding for each successful grant applicant is not rationally based on need because of the $300,000 limit. It cites *Rincon* for the proposition that criteria for the distribution of Snyder Act funds must be "rationally aimed at an equitable division of ... funds." *Rincon*, 618 F.2d at 572. Plain-

tiff presents statistics and figures which show that, because of the proportionately large population of the Navajo nation, a $300,000 grant provides much less money per capita to its residents than the same grant would to a smaller tribe or organization also eligible for a $300,000 grant. This, plaintiff claims, results in an inequitable distribution of funds in violation of *Rincon.*

The government responds that it is misleading to use population figures since the limits were set based on a rational projection that no tribe or group would spend more than the limit on any program. It provides evidence to show that plaintiff has not spent all of its grant money in the past five years. The plaintiff states that the reason it has not spent all of its funding in the past years is because the funds are not received by the grantees until the fiscal year is nearly over. Presumably the funds are then spent in subsequent years.

There are disputed questions of fact as to this issue. *Rincon* requires a rational criteria for distribution of funds. Plaintiff states that the present system is not rational, while defendants maintain that it is. Such a dispute is to be determined by the trier of fact. Summary judgment is denied as to this issue.

## ORDER

1. Plaintiff's Motion for Summary Judgment is granted as to the issue of whether the ICWA and the Snyder Act create a trust obligation on the part of the government for the benefit of Indians.

2. Plaintiff's Motion for Summary Judgment is denied as to the validity of the regulations contained in 25 C.F.R. part 23, including the characterization of the ICWA grant program as "competitive" and "discretionary." Summary judgment is granted in favor of defendants on this issue.

3. Plaintiff's Motion for Summary Judgment is granted as to the failure of the review committee to meet as a quorum as specified in the Guidelines. The parties are to supply to the court further memoranda on the issue of appropriate remedy for this violation of the Guidelines. Plain-

tiff is to submit a supplemental memorandum in support of its motion for summary judgment addressing the issue of appropriate remedy on or before November 3, 1986. Defendants' supplemental response and plaintiff's supplemental reply shall be filed pursuant to the time limits of Local Rule 11(d) and (e) and the Federal Rules of Civil Procedure.

4. Plaintiff's Motion for Summary Judgment is denied as to the issue of whether the minimum score of 85 violates the Administrative Procedures Act. Summary judgment is granted in favor of defendants on that issue.

5. Plaintiff's Motion for Summary Judgment is denied as to the issue of whether the BIA supplied sufficient technical assistance to plaintiff in the preparation of plaintiff's application because there exist questions of material fact.

6. The issue of the propriety of the administrative appeal in this case is not reached because of the ruling that the initial review process was faulty.

7. Plaintiff's Motion for Summary Judgment is denied as to the issue of whether the $300,000 funding limit violates the law because there exist questions of material fact.