IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**GILA RIVER INDIAN COMMUNITY,**
*Appellant,*

*v.*

**DEPARTMENT OF CHILD SAFETY, SARAH H., JEREMY H., A.D.,**
*Appellees.*

---

No. CV-16-0220-PR
Filed June 13, 2017

---

Appeal from the Superior Court in Maricopa County
The Honorable Karen L. O'Connor, Judge
No. JD528014
**AFFIRMED**

Opinion of the Court of Appeals, Division One
240 Ariz. 385 (App. 2016)
**VACATED**

---

COUNSEL:

Linus Everling, Thomas L. Murphy (argued), Gila River Indian Community Office of General Counsel, Sacaton; and April E. Olson, Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg, LLP, Tempe, Attorneys for Gila River Indian Community

James Manley, Aditya Dynar (argued), Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Sarah and Jeremy H.

Amanda Lomayesva, Tamara Walters, Frederick Lomayesva, Office of the Attorney General Pascua Yaqui Tribe, Tucson, Attorneys for Amicus Curiae Pascua Yaqui Tribe, Salt River Pima Maricopa Indian Community, Navajo Nation, Cherokee Nation, and the Native American Bar Association of Arizona

Bruce F. Peterson, Maricopa County Office of the Legal Advocate, Tiffany Mastin, Deputy Legal Advocate, Phoenix, Guardian ad Litem for the Minor Child

———————

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BRUTINEL, TIMMER, GOULD, and LOPEZ and JUDGE VÁSQUEZ joined.[*]

———————

CHIEF JUSTICE BALES, opinion of the Court:

**¶1**　　　　This case concerns the transfer of child custody proceedings from state to tribal court under 25 U.S.C. § 1911(b) of the Indian Child Welfare Act ("ICWA"). We hold that § 1911(b) addresses transfer only of foster care placement and termination-of-parental-rights actions. Although § 1911(b) does not apply to state preadoptive and adoptive placements, such as the proceeding involved here, it also does not prohibit the transfer of such actions to tribal court.

## I.

**¶2**　　　　A.D. is a member of the Gila River Indian Community ("Community") and an Indian child for purposes of ICWA. *See* 25 U.S.C. § 1903(4). Having been prenatally exposed to amphetamines and opiates, A.D. was born in August 2014 in Arizona outside the Community's boundaries. Five days after her birth, the Arizona Department of Child Safety ("DCS") removed A.D. from her mother, who is also a Community member, and placed her with Sarah H. and Jeremy H. ("foster parents"). A.D. has since resided with her foster parents outside the Community's boundaries. Because the foster parents are not members of A.D.'s extended family or Indians, they do not qualify for a presumptive preference as an adoptive placement under ICWA. *See id.* § 1915(a) (stating that, absent good cause to the contrary, preference shall be given to a placement with members of the child's extended family, other members of the child's tribe, or other Indian families).

———————

[*] Justice Clint Bolick has recused himself from this case. Pursuant to article 6, section 3, of the Arizona Constitution, the Honorable Garye L. Vásquez, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

¶3        Three days after her foster care placement, DCS filed a dependency petition on behalf of A.D. in the juvenile court and notified the Community.  In October 2014, the Community moved to intervene under 25 U.S.C. § 1911(c), which the court allowed.  In February 2015, the court found that the state had made "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family," *see id.* § 1912(d), but that those efforts were unsuccessful. The court also found that the birth parents' continued custody of A.D. was likely to result in serious emotional or physical danger to A.D., found A.D. dependent, and granted DCS's request for a case plan of severance and adoption.  The Community agreed to the new case plan.

¶4        In March 2015, DCS moved to terminate the parental rights of A.D.'s mother and father and notified the Community.  The Community requested that the child remain in her current placement until a suitable ICWA placement could be identified.  In a June 2015 order, the court terminated the rights of A.D.'s parents and also found good cause to deviate from ICWA's placement preferences.  The Community did not appeal from that order.

¶5        The foster parents moved to intervene, noting their desire to adopt A.D.  The Community did not respond to the motion, and the court allowed the foster parents to intervene.  On July 1, 2015, the foster parents petitioned to adopt A.D.  After the court scheduled A.D.'s adoption for August 26, 2015, the Community successfully moved to stay the adoption proceedings.

¶6        On August 18, 2015, the Community moved to transfer the proceedings to its tribal court under 25 U.S.C. § 1911(b).  The Community noted that DCS supported the motion to transfer, but the foster parents and A.D.'s guardian ad litem objected.  After holding evidentiary hearings, the juvenile court in January 2016 denied the Community's motion to transfer A.D.'s case to tribal court, finding the foster parents had met their burden of showing that good cause existed under § 1911(b) to deny the motion.

¶7        The Community appealed, and the court of appeals addressed whether "25 U.S.C. § 1911(b) of ICWA allow[s] transfer to tribal court of state preadoptive and adoptive placement proceedings occurring after parental rights have terminated[.]"  *Gila River Indian Cmty. v. Dep't of*

*Child Safety*, 240 Ariz. 385, 389 ¶ 11 (App. 2016). The court ruled that § 1911(b) does not. *Id.*

**¶8** We granted review to determine whether § 1911(b) of ICWA governs the transfer of preadoptive and adoptive placement actions from state to tribal court, a recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

**¶9** The Community first argues that § 1911(b)'s application was not properly before the court of appeals because the foster parents did not cross-appeal the juvenile court's denial of the Community's transfer motion. The foster parents, however, were not aggrieved by the juvenile court's order and therefore were not required to cross-appeal. *See CNL Hotels & Resorts, Inc. v. Maricopa County*, 230 Ariz. 21, 25 ¶ 20 (2012) ("Arizona's long-settled rule is that if [an] appellee in its brief seeks only to support or defend and uphold the judgment of the lower court from which the opposing party appeals, a cross-appeal is not necessary.") (internal quotation marks omitted). In opposing the Community's transfer motion, the foster parents argued that § 1911(b) did not apply, and they repeated that argument in their answering appellate brief. Thus, whether § 1911(b) applied was an issue properly before the court of appeals.

**¶10** On the merits, the Community argues that the court of appeals erred in holding that § 1911(b) does not allow transfer of a dependency case after parental rights have been terminated. We review the interpretation of statutes de novo. *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334 ¶ 10 (2009).

**¶11** With respect to ICWA, "we attempt to give effect to the will of Congress as expressed in the statutory language, which we construe liberally in favor of the interest in preserving tribal families." *Id.* Nonetheless, we "will not look beyond the clear meaning of express statutory terms unless a literal interpretation would thwart the purpose of the statutory scheme or lead to absurd results." *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 570 ¶ 14 (2008) (quoting *Navajo Nation v. Hodel*, 645 F. Supp. 825, 827 (D. Ariz. 1986)).

**¶12**      Congress enacted ICWA in 1978 to address the removal of an alarmingly high percentage of Indian children from their Indian families by nontribal public and private agencies and the placement of such children in non-Indian foster and adoptive homes and institutions. *See* 25 U.S.C. § 1901(4).   In response to these concerns, ICWA provides a dual jurisdictional scheme over Indian child custody proceedings. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989). ICWA delineates "child custody proceeding" into four categories: foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C. § 1903(1)(i)–(iv).

**¶13**      The first jurisdictional component of ICWA, § 1911(a), concerns all four categories of actions and acknowledges exclusive tribal jurisdiction over actions involving Indian children who reside or are domiciled within the tribe's reservation and over cases involving Indian children who are wards of tribal courts regardless of residence or domicile. The Community does not assert exclusive jurisdiction under § 1911(a) as A.D. has never resided or been domiciled within the Community's reservation, nor is she a ward of the Community's court.

**¶14**      The second jurisdictional component of ICWA, § 1911(b), concerns transfer proceedings.  It addresses two of the four categories of actions involving Indian children by acknowledging concurrent but presumptively tribal jurisdiction over foster care placement and termination-of-parental-rights actions. *See Holyfield*, 490 U.S. at 36.  Section 1911(b) states:

> In any State court proceeding for the *foster care placement of, or termination of parental rights to*, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe:  Provided, [t]hat such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911(b) (emphasis added).  Thus, § 1911(b) by its terms governs only foster care placement and termination-of-parental-rights actions.

¶15    ICWA defines "foster care placement" as:

[A]ny action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, *but where parental rights have not been terminated . . . .*

*Id.* § 1903(1)(i) (emphasis added).    And ICWA defines "termination of parental rights" as "any action *resulting in the termination of the parent-child relationship.*" *Id.* § 1903(1)(ii) (emphasis added).

¶16    When the Community requested a transfer in August 2015, the action was not one for foster care placement or termination of parental rights because the court had already terminated the rights of A.D.'s parents in June 2015 and that ruling had not been appealed. *See id.* § 1903(1)(i)–(ii). Therefore, § 1911(b) did not govern the Community's motion to transfer.

¶17    We are not persuaded by the Community's argument that our reading of § 1911(b) will thwart ICWA's purpose or lead to absurd results. In various provisions of ICWA, Congress distinguished between foster care placement and termination-of-parental-rights actions on the one hand and preadoptive and adoptive placement actions on the other.    *See id.* § 1903(1)(i)–(iv); *id.* § 1911(c) (providing right to intervene for foster care placement and termination of parental rights but not for preadoptive or adoptive placement actions); *id.* § 1912(a) (same regarding notice); *id.* § 1912(c) (same regarding right to examine reports or other documents); *id.* § 1914 (same regarding right to petition for invalidation).

¶18    Congress's differentiation throughout ICWA indicates its desire to place certain federal mandates on states for foster care placement and termination-of-parental-rights actions but not preadoptive and adoptive placements.  The latter are not presumptively subject to transfer to tribal court under § 1911(b).  But even if preadoptive and adoptive placements proceed in state court, a tribe may continue to participate if, as here, it has intervened under § 1911(c). *See also In re Appeal in Maricopa Cty. Juvenile Action No. A-25525*, 136 Ariz. 528, 533 (App. 1983) (finding trial judge acted within discretion in granting tribe's motion to intervene in adoption proceeding).  Moreover, in such cases a state court must follow

ICWA's placement preferences unless it finds good cause to deviate from them. 25 U.S.C. § 1915(a)–(b). *Cf. Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552, 2565 (2013) (holding that "§ 1915(a)'s rebuttable adoption preferences [do not] apply when no alternative party has formally sought to adopt the child").

¶19 Although the court of appeals correctly held that § 1911(b) did not apply here, that court was mistaken in stating that ICWA does not "allow" the transfer of actions "occurring after parental rights have terminated[.]" *Gila River Indian Cmty.*, 240 Ariz. at 389 ¶ 11. By its terms, § 1911(b) provides that a state court must transfer foster care placement or termination-of-parental-rights cases to tribal court unless the state court finds good cause for retaining the case or unless either parent objects to the transfer. Section 1911(b) is silent as to the discretionary transfer of preadoptive and adoptive placement actions, but we do not interpret that silence to mean prohibition. *See Puyallup Tribe of Indians v. State* (*In re M.S.*), 237 P.3d 161, 165 ¶ 13 (Okla. 2010) ("Reading what is contained in the statute . . . does not require us to read into the statute what is not there, i.e., that transfers may only be granted if requested before a termination of parental rights proceeding is concluded.") (emphasis omitted).

¶20 When enacting ICWA, Congress recognized, rather than granted or created, tribal jurisdiction over child custody proceedings involving Indian children. *See Holyfield*, 490 U.S. at 42 ("Tribal jurisdiction over Indian child custody proceedings is not a novelty of the ICWA."); Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,821–22 (June 14, 2016) (codified at 25 C.F.R. pt. 23) [hereinafter 2016 BIA Final Rule] (noting that Congress, in enacting ICWA, recognized that inherent tribal jurisdiction over domestic relations, including child-custody matters, is an aspect of a "Tribe's right to govern itself"); Cohen's Handbook of Federal Indian Law 840, 842 (Nell Jessup Newton et al. eds., 12th ed. 2012) ("Before the passage of ICWA, tribes exercised jurisdictional authority over custody of their children," and § 1911(b) "reflects the legislative compromise made when states and others resisted tribes' exercise of *exclusive* jurisdiction over *all* Indian child custody proceedings.") (emphasis added).

¶21 Thus, tribes have the inherent authority to hear child custody proceedings involving their own children. By enacting ICWA, Congress recognized that authority and clarified the standards for state courts in

granting transfer requests of certain types of cases. As a result, although ICWA does not govern the transfer of preadoptive and adoptive placement actions, state courts may nonetheless transfer such cases involving Indian children to tribal courts.

¶22 The 2016 Bureau of Indian Affairs ("BIA") Final Rule and Guidelines support this conclusion. Both state the following: "Parties may request transfer of preadoptive and adoptive placement proceedings, but the standards for addressing such motions are not dictated by ICWA or these regulations." 2016 BIA Final Rule, 81 Fed. Reg. at 38,822; *see also* Office of the Assistant Secretary - Indian Affairs, Bureau of Indian Affairs, U.S. Dep't of Interior, Guidelines for Implementing the Indian Child Welfare Act 47 (2016).

¶23 Our interpretation also comports with rulings by other courts that § 1911(b) only applies to transfer requests for foster care placement and termination-of-parental-rights actions, *see In re A.P.*, 962 P.2d 1186, 1188 ¶ 10 (Mont. 1998), but does not preclude transfer of preadoptive and adoptive placement actions. *See In re M.S.*, 237 P.3d at 166 ¶ 14 ("[W]e cannot construe § 1911(b), as a matter of law, as an expression of intent to preclude tribal court jurisdiction when transfer is requested after parental rights are terminated."). *But see In re Welfare of the Child of R.S.*, 805 N.W.2d 44, 47 (Minn. 2011) (concluding that federal and state law did not authorize transfer of a state preadoptive action).

¶24 Similarly, other courts have held that § 1911(c), which recognizes a tribe's right to intervene in foster care placement and termination proceedings, does not bar state courts from allowing intervention in adoption proceedings. *See In re Appeal in Maricopa Cty. Juvenile Action No. A-25525*, 136 Ariz. at 533 ("Although [ICWA] explicitly provides a tribe with the right to intervene in foster care and termination proceedings, it does not preclude a trial court from exercising its discretion in allowing intervention by a tribe in an adoption proceeding.") (citation omitted); *Jeffrey A. v. Tohono O'odham Nation (In re Baby Boy C.)*, 805 N.Y.S.2d 313, 329 (N.Y. App. Div. 2005) ("Many courts have held that although ICWA does not provide a statutory right of intervention, neither does it prohibit intervention under applicable state law.").

¶25 Our holding does not preclude a tribe from requesting the transfer to tribal court of a preadoptive or adoptive placement, but we have

no occasion here to discuss grounds other than § 1911(b) - such as Arizona statutes or the forum non conveniens doctrine - that might support a transfer motion. *Cf.* 2016 BIA Final Rule, 81 Fed. Reg. at 38,822 (noting "it may be appropriate to transfer preadoptive and adoptive proceedings involving children residing outside of a reservation to Tribal jurisdiction in particular circumstances" but declining to identify criteria). The Community relied only on § 1911(b) in requesting a transfer.

¶26 In denying the Community's motion, the juvenile court concluded there was "good cause" under § 1911(b) not to order a transfer pursuant to the statute. The Community argues that the court erred in finding "good cause." The juvenile court reached the correct conclusion, irrespective of its "good cause" determination, because § 1911(b) does not apply to preadoptive and adoptive proceedings. We accordingly affirm its denial of the motion to transfer. *See State v. Perez*, 141 Ariz. 459, 464 (1984) ("The fact that the trial judge came to the proper conclusion for the wrong reason is irrelevant. We are obliged to affirm the trial court's ruling if the result was legally correct for any reason.").

¶27 Finally, contrary to the court of appeals and the foster parents' arguments, we decline to rely on waiver as a basis for affirming the denial of the Community's transfer motion. *See Gila River Indian Cmty.*, 240 Ariz. at 391 ¶ 18. The Community did not expressly waive its right to seek transfer; thus, the only waiver here would be implied because the Community did not seek transfer until after parental rights were terminated. However, "[t]o imply a waiver of jurisdiction would be inconsistent with the ICWA objective of encouraging tribal control over custody decisions affecting Indian children." *In re J.M.*, 718 P.2d 150, 155 (Alaska 1986) (emphasis omitted). Moreover, courts have historically been reluctant to imply a waiver of Indian rights under ICWA. *Id.*; *cf. In re Guardianship of Q.G.M.*, 808 P.2d 684, 689 (Okla. 1991) ("Because of the ICWA objective to ensure that tribes have an opportunity to exercise their rights under the Act, and because of the plain language of § 1911(c), a tribe's waiver of the right to intervene must be express.").

## III.

¶28 We vacate the court of appeals' opinion and affirm the juvenile court's denial of the Community's motion to transfer.