NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHYANN P.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.C., H.C.,
*Appellees.*

No. 1 CA-JV 17-0363
FILED 1-4-2018

Appeal from the Superior Court in Mohave County
No. S8015JD201600085
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

Erika A. Arlington Esq., PC, Flagstaff
By Erika A. Arlington
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O H N S E N**, Judge:

¶1          Shyann P. ("Mother") appeals the superior court's order ruling her two children dependent.  Because substantial evidence supports the court's decision, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Mother has a history of methamphetamine abuse, which caused the State to remove the children from her care in 2014.  The Department of Child Safety ("DCS") returned the children to Mother in 2015 after she completed services and drug testing.

¶3          In August 2016, DCS commenced the present dependency action after an incident in which DCS alleged Mother appeared to be under the influence of drugs or alcohol and failed to supervise her children in a gas station parking lot.  DCS once again removed the children from Mother's care, alleging substance abuse and failure to provide for the children's basic needs, including failure to provide stable housing.

¶4          By early December 2016, DCS characterized Mother's progress as "encouraging" after she had passed drug tests, completed a substance-abuse class, and demonstrated to DCS's satisfaction that she had full-time employment and appropriate housing.  DCS once again returned the children to Mother that month in an in-home dependency placement.

¶5          On February 8, 2017, however, while driving to pick up her children from daycare, Mother crashed her car, then drove away from the scene of the accident.  A short time later, a police officer pulled her over after noticing she was driving erratically in a crippled, smoking car.  The officer noticed that Mother's eyes were bloodshot and her breath smelled of alcohol, so he had her perform a field sobriety test, which she failed.  Later, Mother submitted to a blood test that showed a blood alcohol content of .187, and she pled guilty to driving under the influence.

**¶6** While taking her blood, police observed several small puncture wounds in various stages of healing on Mother's left arm; Mother said they were freckles from when one of her children was born. After the blood draw, Mother told a DCS caseworker that while she did not have a problem with alcohol, she did have a methamphetamine problem. DCS picked up her children from daycare and placed them in foster care.

**¶7** Over the course of several weeks just before her DUI, Mother "minimally engaged" in the series of intensive in-home services that DCS had arranged for her, failing to appear for four sessions over five weeks. Although one of the services was designed to address triggers of substance abuse, Mother declined to participate in those services, saying they were "no longer relevant." After her DUI, Mother was discharged from the services program.

**¶8** In late May 2017, Mother made a series of phone calls to her caseworker and two other DCS employees during which, according to DCS, Mother "appeared to be under the influence of alcohol or an illegal substance, evidenced by her incoherent and disorganized thoughts, rambling speech and mood swings." When one of the DCS employees asked Mother to take a drug test, she became belligerent and screamed profanities at the employee. Mother later called back and apologized.

**¶9** Two days later, Mother's parent aide and her children's foster parent both called DCS and reported that Mother was behaving erratically that morning. The foster parent reported that Mother was verbally abusive to her, telling her, "My children are allergic to you Hispanic people" and "You're poisoning my children with your wetback food." When DCS called Mother about that incident, Mother appeared to be under the influence of drugs or alcohol—she rambled incoherently and had trouble focusing, pausing for long periods of time while speaking.

**¶10** During Mother's one-day dependency trial on July 7, 2017, the children's caseworker testified that Mother had not shown an understanding of why DCS removed her children from her care or how substance abuse affects her. The caseworker testified he had ongoing concerns that Mother had completed DCS services in the past and yet her behavior has not changed, and that she may have an untreated mental illness. In the caseworker's opinion, DCS could not safely return her children to her care because of her mental state, her failure to change her behavior, and her inability to provide for her children's needs.

**¶11**         The superior court ruled the children dependent, finding that DCS had proved by a preponderance of the evidence that Mother was unable to provide for the basic needs of the children and that she abused substances.  In its written order, the court found that "Mother is unwilling or unable to provide proper and effective parental care and control by neglecting the children due to substance abuse" and that she "is unwilling or unable to provide proper and effective parental care and control by neglecting to provide for the children's basic needs."

**¶12**         Mother timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 8-235(A) (2018), 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).[1]

## DISCUSSION

**¶13**         "We review a dependency order for a 'clear abuse of discretion.'" *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015).  "[B]ecause the primary consideration in a dependency case is always the best interest of the child, the juvenile court is vested with a great deal of discretion." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005) (quotations and alterations omitted).  In a dependency action, the superior court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Pima County Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987).  Therefore, "[o]n review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings," *Louis C.*, 237 Ariz. at 486, ¶ 2, and generally will not reverse unless no reasonable evidence supports the court's ruling, *Willie G.*, 211 Ariz. at 235, ¶ 21.

**¶14**         A child is dependent when the child is "[i]n need of proper and effective parental care and control and . . . has no parent or guardian willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15) (2018).  In considering a dependency petition, the superior court must determine whether the alleged circumstances supporting dependency exist at the time of the dependency hearing.  *See Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 51, ¶ 17 (App. 2016); *Carolina H. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 569, 572, ¶ 12 (App. 2013).

---

[1]     Absent material revision since the relevant date, we cite a statute's most current version.

¶15　　　　Here, sufficient evidence supports the court's finding that at the time of the dependency hearing, Mother was not willing or capable of exercising effective parental control because she had a substance-abuse problem. In particular, the court could have inferred from Mother's drunken accident on the way to her children's daycare less than five months before the hearing—and after she underwent substance-abuse treatment—that she had an unresolved and ongoing substance-abuse problem that likely would endanger her children if they were returned to her. And while the court acknowledged the possibility that the February wreck could have been a one-time incident, the court also reasonably could have concluded that it probably was not, given the reports of Mother's apparent intoxication during communications with DCS workers less than two months before the hearing, and the fact that she missed two drug tests in the four weeks after the February wreck. Moreover, Mother's admitted methamphetamine abuse dating back to 2014 and her continued use after taking substance-abuse classes suggests a longstanding and persistent pattern of abuse, further supporting the court's dependency ruling. *Cf.* A.R.S. § 8-533(B)(3) (2018) (ongoing chronic substance abuse, standing alone, is a sufficient ground for severing a parent's relationship with a child). Finally, the court reasonably could have given weight to the DCS caseworker's opinion that Mother's substance abuse made it unsafe to return her children to her.

¶16　　　　Mother points to other evidence that she asserts establishes that she does not have a substance-abuse problem, including testimony that her substance-abuse counseling facility did not include a diagnosis of substance-abuse dependency in its assessment of her; testimony that she successfully completed substance-abuse counseling at that facility; and testimony that she tested negative on a series of drug tests following both the August 2016 and February 2017 incidents. But this evidence does not negate the substantial evidence, including the DUI on her way to her children's daycare, suggesting that Mother does have an ongoing substance-abuse problem that is likely to put her children at risk. *See Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003) ("A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists.").

¶17　　　　Mother additionally argues the superior court's finding that she is unable to provide for her children's basic needs is not supported by the evidence. According to Mother, the superior court improperly based its decision on Mother's reliance on public assistance and discounted evidence that Mother had stable housing and employment. Because we conclude substantial evidence supports the court's order finding the children dependent on the substance-abuse ground, we need not reach the merits of

Mother's argument concerning the finding on the children's basic needs. *See Gila River Indian Cmty. v. Dep't of Child Safety*, 242 Ariz. 277, 292, ¶ 26 (2017) (quoting *State v. Perez*, 141 Ariz. 459, 464 (1984)) ("We are obliged to affirm the trial court's ruling if the result was legally correct for any reason.").

**CONCLUSION**

¶18        Because substantial evidence of substance abuse supports the superior court's dependency ruling, we affirm its decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA