NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MICHAEL OBERG, *Petitioner/Appellee*,

*v.*

MARGARET OBERG, *Respondent/Appellant*.

No. 1 CA-CV 21-0704 FC
FILED 10-13-2022

Appeal from the Superior Court in Maricopa County
No. FC2019-096521
The Honorable Jacki Ireland, Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

Tiffany & Bosco PA, Phoenix
By Amy D. Sells
*Co-Counsel for Petitioner/Appellee*

The Harding Firm LLC, Gilbert
By Kina Harding
*Co-Counsel for Petitioner/Appellee*

The Cavanagh Law Firm PA, Phoenix
By Christina S. Hamilton
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

---

**C A T T A N I**, Chief Judge:

¶1        Margaret Oberg ("Wife") appeals from an amended dissolution decree, which was based in significant part on the superior court's conclusion that Wife's post-nuptial agreement with Michael Oberg ("Husband") was enforceable against Wife.  Because Husband did not present clear and convincing evidence to show the agreement was fair and equitable, we vacate the amended decree and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Husband and Wife married in 1996.  They have two children, one of whom has reached majority.  Husband petitioned for dissolution in December 2019.

¶3        Less than two months before Husband filed his dissolution petition, the parties signed a post-nuptial agreement (the "PNA").  The PNA granted Husband two community property parcels: the marital home (with Husband assuming the mortgage) and a lot in Payson (the "Rim Trail Lot").  The PNA further recited that both parties waived spousal maintenance.

¶4        Wife did not respond to Husband's petition or amended petition, and the court entered a default decree that included the property grants and spousal maintenance waiver (the "Default Decree").  The Default Decree equally divided the remaining community property except for a few items that were awarded to the children.

¶5        Wife then appeared and moved to set aside the Default Decree.  Following an evidentiary hearing, the superior court denied Wife's motion.  Wife appealed, and we vacated the Default Decree because the court had not addressed whether the PNA was fair and equitable:

> Although the agreement need not comply with the property distribution and spousal maintenance provisions of A.R.S. §§ 25-318 and -319, Husband concedes the post-nuptial agreement is governed "by case law, such as" [*In re*] *Harber's Estate*, [104 Ariz. 79, 88 (1969),] *Austin v. Austin*, 237 Ariz. 201 (App. 2015) and *Hutki v. Hutki*, 244 Ariz. 39 (App. 2018). Those cases require the court to determine that the post-nuptial agreement was both fair and equitable.
>
> Here, the record does not reflect that the superior court made this required determination, a prerequisite for the post-nuptial agreement to be incorporated into the Decree. Accordingly, the Decree cannot stand.

*Oberg v. Oberg* (*Oberg I*), 1 CA-CV 20-0468 FC, 2021 WL 1578154, at *2, ¶¶ 8–9 (Ariz. App. Apr. 22, 2021) (mem. decision).

¶6 On remand, Husband lodged a proposed Amended Decree that largely mirrored the substantive terms of the Default Decree, arguing that the superior court had "implicitly determined that the PNA is fair and equitable by upholding the PNA" in the Default Decree. Wife objected, contending that the evidence presented at the earlier evidentiary hearing established that the PNA was unfair. At the next status conference, the superior court proposed that it could determine whether the PNA was fair based on the evidence previously presented, and the parties agreed the court had sufficient record evidence to do so, although Wife's counsel suggested the court could hold a "subsequent, smaller hearing" if it identified "some discrete issues that . . . were not addressed by the underlying transcript."

¶7 After reviewing the record, the superior court determined the PNA was (1) clear and unambiguous, (2) "free from any taint of fraud, coercion or undue influence," and (3) "fair and equitable at the time the PNA was executed based on the benefit Wife was receiving, specifically, the possibility to reconcile her marriage and maintain her lifestyle." The superior court signed an amended decree that "incorporate[d] and merge[d] . . . the Default Decree" in its entirety (the "Amended Decree").

¶8 Wife timely appealed from the Amended Decree. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**I.     Waiver and Law of the Case.**

**¶9**          Preliminarily, Husband contends that Wife "waived a fairness determination by this court [in *Oberg I*] in favor of a fairness determination by the superior court on the same record."  But in *Oberg I*, we vacated the faulty Default Decree and remanded for the superior court to make a fairness determination and enter a new decree.  *Oberg I*, 1 CA-CV 20-0468-FC, at *2, ¶¶ 9–10.  Now that the superior court has done so, nothing precludes Wife from challenging that ruling on appeal.  Husband's waiver argument is unpersuasive and unavailing.

**¶10**          Citing several arguments from Wife's *Oberg I* appellate briefs, Husband contends that several of Wife's arguments in the instant appeal "were either waived or expressly or impliedly decided against her in the first appeal" and are thus barred by the law of the case.  Under that doctrine, legal questions previously decided in the same case by the same court or a higher appellate court will not be reopened.  *Sholes v. Fernando*, 228 Ariz. 455, 458, ¶ 8 (App. 2011); *see also Emps. Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 115 Ariz. 439, 441 (App. 1977) (law of the case applies "if an appellate court *has ruled upon a legal question*") (emphasis added).  But we only addressed one of those issues in *Oberg I*: that the PNA "need not comply with the property distribution and spousal maintenance provisions of A.R.S. §§ 25-318 and -319."  *Oberg I*, 1 CA-CV 20-0468 FC, at *2, ¶ 8.  We did not reach any of the other six arguments Husband cites.  *See Stauffer v. Premier Serv. Mortg., LLC*, 240 Ariz. 575, 579, ¶ 15 (App. 2016) ("[I]f the issue was not resolved in the first ruling, . . . the [law of the case] doctrine does not apply.") (citation omitted).

**¶11**          Moreover, five of those other six arguments relate to the fairness of the PNA,[1] which the superior court determined in the first instance after our remand in *Oberg I*.  And as to the sixth (whether the Default Decree's child support calculation was correct), the superior court re-addressed and reaffirmed the child support award in the Amended

---

[1]     Whether the PNA is unfair under A.R.S. § 25-317; whether the superior court improperly considered marital misconduct as relevant to whether the parties were attempting to reconcile; whether the superior court properly analyzed the fairness of the PNA; whether the PNA fails for lack of consideration; and whether the fact that Wife was not represented by counsel at the time of signing is relevant to its fairness.

Decree. Wife is not precluded from challenging these new determinations in this appeal.

## II.     Enforceability of the PNA.

**¶12**     Spouses are free to contract for changes to their property rights in a post-nuptial agreement. *Harber's Estate*, 104 Ariz. at 88. But to be enforceable, such agreements must be "free from any taint of fraud, coercion or undue influence" and must be "fair and equitable," and the spouse challenging the agreement—here, Wife—must have entered it "with full knowledge of the property involved and her rights therein." *Id*. The party seeking to enforce the agreement—here, Husband—must prove those elements by clear and convincing evidence, *id.*, a heightened standard of proof that requires a showing that "the thing to be proved is highly probable or reasonably certain." *Gila River Indian Cmty. v. Dep't of Child Safety*, 238 Ariz. 531, 537, ¶ 23 (App. 2015) (citation omitted).

**¶13**     "The touchstone of determining what is 'equitable' is a 'concept of fairness dependent upon the facts of particular cases.'" *In re Marriage of Flower*, 223 Ariz. 531, 536, ¶ 18 (App. 2010) (quoting *Toth v. Toth*, 190 Ariz. 218, 221 (1997)). To achieve a fair and equitable distribution of community property—even if the parties have a post-nuptial agreement—the superior court thus must consider all evidence, including "the relation of the parties at the time of trial, their ages, financial conditions, opportunities, and the contributions of each to the joint estate." *Wick v. Wick*, 107 Ariz. 382, 385 (1971).

**¶14**     Here, Husband failed to meet his burden of proving by clear and convincing evidence that the PNA was fair and equitable. As to the parties' real property, Wife testified, and Husband did not dispute, that the parties purchased the marital home and the Rim Trail Lot during the marriage, meaning both were community property ordinarily subject to equitable division. A.R.S. §§ 25-211, 25-318(A). The PNA awards both to Husband, with Wife receiving no compensation for her interest in either.

**¶15**     Husband suggests that, because he assumed responsibility for the mortgage debt, it was fair that he be awarded the marital home. But that assertion fails to account for Wife's share of the equity in the property at the time of the divorce. Husband even conceded that he "potentially" could have kept both properties while buying out Wife's interest in each. He presented no evidence to show the PNA's arrangement was fair on its own merits, instead testifying that the agreement was intended "to try and make the marriage work" after Wife had an affair. Husband's offer to stay

married (at least temporarily) could not justify an agreement to divide community assets unfairly upon dissolution. *Cf.* A.R.S. § 25-318(A) (division of property "without regard to marital misconduct"). The superior court's ruling to the contrary is unsupportable.

**¶16** As to spousal maintenance, Wife presented evidence that she was only earning $2,000 per month on a full-time basis and would not be able to meet her needs without maintenance. Husband contends Wife could nevertheless "live comfortably" because she would receive half of the remaining community assets. Even though these assets would be relevant to a spousal maintenance calculation under § 25-319(A)(1), *see Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 18 (App. 1998), Husband presented no evidence that they would provide for Wife's reasonable needs during her lifetime. *See In re Marriage of Cotter*, 245 Ariz. 82, 86, ¶ 10 (App. 2018). Indeed, he conceded Wife likely would have to liquidate some of those assets (not just rely on income from them) to meet her reasonable needs. *See Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 11 (App. 2007). Husband offered only the same insufficient justification for the waiver—that Wife "continued to have [an] affair" and Husband wanted to give her an incentive to stay faithful during the marriage—and he provided no reasonable basis to conclude that Wife's alleged marital misconduct rendered the spousal maintenance waiver fair.

**¶17** Husband thus did not show by clear and convincing evidence that the PNA was fair and equitable. *See Harber's Estate*, 104 Ariz. at 88. We therefore vacate the Amended Decree and remand for further proceedings, unconstrained by the PNA.[2] *See Keller v. Keller*, 137 Ariz. 447, 448 (App. 1983) ("The court is not bound by any [post-nuptial] agreement and can, if it believes the agreement to be unfair or inequitable, reject or modify the agreement.").

### III. Attorney's Fees on Appeal.

**¶18** Both parties request their attorney's fees and costs under A.R.S. § 25-324(A). Having considered the relevant factors and in an exercise of our discretion, we award Wife her reasonable attorney's fees and taxable costs on appeal upon compliance with ARCAP 21.

---

[2] The parties stipulated on March 1, 2022, that Husband would pay $1,100 in monthly child support going forward. The superior court may consider on remand whether that stipulation remains appropriate.

## CONCLUSION

**¶19** We vacate the Amended Decree and remand for further proceedings.

